|  |  |
|---|---|
| KENNY TRIPLETT, individually and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> ROOMS TO GO NORTH CAROLINA CORP., D/B/A ROOMS TO GO, R.T.G. FURNITURE CORP., D/B/A ROOMS TO GO, RTG AMERICA, LLC, THE JEFFREY SEAMAN 2009 ANNUITY TRUST, AND RETAIL MANAGEMENT SERVICES CORP. <br><br> Defendants. | Civil Action No. |

# CLASS ACTION COMPLAINT

Plaintiff Kenny Triplett, individually, and on behalf of all others similarly situated, hereby files suit against the Defendants listed below and alleges the following:

## INTRODUCTION

1. Plaintiff purchased furniture from Defendants, five affiliated corporate entities who sell furniture using the trade name Rooms to Go. Combining all companies that sell furniture under the Rooms to Go trade name, Rooms to Go is the fourth largest furniture retailer in the United States.

2. Defendants offer optional add-ons to be purchased along with their leather and fabric furniture supposedly to protect the furniture from food or beverage stains. Although these add-ons are referred to by a number of names, their contracts identify them as the "ForceField

Fabric Protection Plan" and the "ForceField Leather Protection Plan" ("ForceField Protection Plans"). Pursuant to the terms of the ForceField Protection Plan contracts, Defendants promise that, "Your furniture will be professionally treated before delivery to resist all food and beverage spills that occur in most households." The Protection Plan contract is entitled "ForceField EXCLUSIVE FABRIC PROTECTION 3-YEAR LIMITED WARRANTY CERTIFICATE."

3. Defendants do not actually professionally treat customers' furniture with ForceField fabric or leather protectant. Testing obtained by Plaintiff showed no presence of any fabric or leather protectant on his furniture at all. Furthermore, during the class period, Defendants did not purchase enough ForceField fabric or leather protectant to professionally treat every ForceField Protection Plan customer's furniture.

4. Plaintiff seeks a statewide class on behalf of purchasers of Rooms To Go ForceField Protection Plans in North Carolina. Because of Defendants' deceptive conduct and failure to honor their contractual obligations, Plaintiff and putative class members spent millions on ForceField Protection Plans that had little value.

## JURISDICTION AND VENUE

5. Plaintiff Kenny Triplett is a citizen and resident of North Carolina, over the age of eighteen years. Plaintiff purchased furniture and ForceField Protection Plans at a Rooms to Go store in Dunn, North Carolina.

6. Defendant RTG America, LLC, through its subsidiary Rooms to Go North Carolina Corp., sells furniture and ForceField Protection Plans under the trade name "Rooms to Go". RTG America, LLC is incorporated in Nevada. In its Nevada business registration, RTG America, LLC lists corporate officers at two addresses: 400 Perimeter Center Terrace, Atlanta, GA 30346 and 11540 US Highway 92 East, Seffner, FL 33584.

7. The Jeffrey Seaman 2009 Annuity Trust through its subsidiary Rooms to Go North Carolina Corp. sells furniture and ForceField Protection Plans under the trade name "Rooms to Go".

8. Defendant R.T.G. Furniture Corp., d/b/a Rooms to Go sells furniture and ForceField Protection Plans. R.T.G. Furniture Corp. is incorporated in Florida. In its filing with the Florida Secretary of State, R.T.G. Furniture Corp. lists its principal address as 11540 Highway 92 East, Seffner, FL 33584.

9. Defendant Retail Management Services Corporation ("RMSC") performs managerial and administrative services for Defendants R.T.G. Furniture Corp. and Rooms to Go North Carolina Corporation. Defendant Retail Management Services Corp. is incorporated in Florida. In its filing with the Florida Secretary of State, Retail Management Services Corp. lists its principal address as 11540 Highway 92 East, Seffner, FL 33584.

10. Defendant Rooms to Go North Carolina Corp., d/b/a Rooms to Go sells furniture and ForceField Protection Plans. Rooms to Go North Carolina Corp. is incorporated in Florida. In its filing with the Florida Secretary of State, Rooms to Go North Carolina Corp. lists its principal address as 11540 Highway 92 East, Seffner, FL 33584.

11. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), as it is a class action for damages that exceed $5,000,000, exclusive of interest and costs. Kenny Triplett and other North Carolina class members are from a different state than the several of the Defendants, who are incorporated and/or headquartered in Florida or Nevada.

12. This Court has personal jurisdiction over Defendants because they regularly conduct business in North Carolina. Defendants sell furniture at stores in North Carolina; Defendants operate furniture distribution centers in North Carolina; Defendants deliver furniture

to customers in North Carolina, and Defendants service warranty claims under their ForceField Protection Plans in North Carolina.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this district.

## FACTUAL ALLEGATIONS

A. **Defendants Sell ForceField Protection Contracts Through a Common Scheme**

14. Defendants are affiliated corporate entities that sell furniture in the southeastern United States, Florida, and Texas.

15. Defendants all share a common nerve center in Seffner, Florida. At their Seffner, Florida headquarters, corporate executives devise common policies and procedures to sell furniture under the Rooms to Go trade name ("Rooms to Go furniture").

16. At stores where Rooms to Go furniture is sold (and at roomstogo.com), Defendants sell ForceField Exclusive Fabric Protection Plans and ForceField Exclusive Leather Protection Plans.

17. Defendants control seven distribution centers around the country where the furniture is supposed to be treated with the fabric or leather protectants if purchased.

18. At all times relevant to this litigation, Defendants entered into identical ForceField Protection Plan contracts with their customers.

19. Defendants' ForceField Protection Plan contracts describe "ForceField EXCLUSIVE" leather or fabric protection. In both plans, Defendants promise that the customer's "furniture will be professionally treated before delivery to resist all food and beverage spills that occur in most households." If the customer's furniture is stained, Defendants offer to clean the customer's stained furniture, re-treat the furniture with ForceField fabric or leather protectant, reupholster stained areas, or provide a replacement piece of furniture for

stained furniture. The contracts place many limitations upon these post-delivery services. For example, the fabric contract states that all of these post-delivery services are at Rooms to Go's discretion. Furthermore, these services are only provided when a customer's furniture is stained by "normal food and beverage spills."

20. Defendants all purchase the same fabric and leather protectants for the ForceField Protection Plans. The products come from Shield Industries. Shield Industries sells dozens of "ForceField" products, which are intended to protect or clean furniture, carpets, and other household surfaces. Defendants' purchases of the protectants go to cost centers located in Seffner.

21. Defendants also share a customer care center with one common number for ForceField Protection Plan customers to call: 1-800-766-6786.[1] The customer care center representatives speak to customers, including North Carolina customers, who seek service under their ForceField Protection Plan warranty. The customer care center representatives are employees of R.T.G. Furniture Corp. The customer care center representatives report to Kerri Otis. Ms. Otis is an employee of RMSC.

22. Upon information and belief, the distribution centers all report to one senior executive, David Bennett, who is located in Suwanee, Georgia. Mr. Bennett is an employee of RMSC. He gives directives that apply to all of the distribution centers, including the application of the ForceField protectants.

23. Upon information and belief, Mr. Bennett reports to Stephen Buckley, who is the President of RMSC and runs Rooms to Go, located in Seffner, Florida.

---

[1] *See, e.g.*, http://www.roomstogo.com/content/Customer-Service/Customer-Support.

### B. Defendants Sell ForceField Protection Contracts Through Deceptive Practices

24. Defendants share a coordinated aggressive sales strategy in order to maximize ForceField Protection Plan sales. Defendants' sales strategy relies heavily upon deceptive practices.

25. Upon information and belief, Defendants push their sales staff to sell ForceField Protection Plans. Internal reports, called Bond or ForceField Reports, track a salesperson's ForceField sales. Management considers it unacceptable for a salesperson to allow fabric protection sales to drop below 90% of his or her furniture sales. If this occurs, the salesperson is sent to additional training on how to persuade customers to buy the ForceField Plans. When the salesperson cannot close a ForceField sale, a store manager often makes the sales pitches him or herself. Defendants are so determined to sell ForceField Protection Plans that salespersons will sometimes refuse to sell furniture to customers who do not wish to buy ForceField Protection Plans.

26. As one former Rooms to Go employee explained:

> Having worked for ROOMS TO GO for 7 years, I want to make people aware of just one of the many back-handed things this company does. Their salespeople are basically forced into saying almost anything to persuade the customer into paying for fabric/leather protection. They expect almost a 90% penetration of this. I can personally say, anything less is cause for being written up and being threatened with dismissal. I began in early 2000. We had a black vinyl set on the floor which was untreatable.
>
> However, because of the sales contest going on, we were told by management to sell the "bond" on this in order to "spike" the Numbers, in which everyone did. 59.99 for a sofa, 49.99 for the loveseat I think 39.99 for the matching chaise. We sold a ton of these. That's just 1 store. Of course, from these type of practices, they went on to win the "presidents cup" and pocket $1400 per salesperson.[2]

---

[2] *See,* http://mythreecents.com/reviews/rooms-to-go#post-16215, as accessed on April 26, 2016.

27. Defendants' sales staff uses two types of deceptive sales practices to sell ForceField Protection Plans. First, Defendants' sales staff misrepresents or omits material information about ForceField Protection Plans. Second, if not successful in persuading the customer to buy the Protection Plan, Defendants' sales staff places ForceField Protection Plans on customers' bills without notifying the customers.

28. Consistent with the contracts, Defendants' sales staff represents to customers that Defendants will have their furniture professionally treated before delivery. This does not occur. Defendants often fail to treat customers' furniture with ForceField protectant, or apply the product in a manner that will not cover all appropriate surfaces, and that is not consistent with the product's instructions.

29. Defendants also omit material information. During the class period, this included that: that the protectants had not been tested by the Defendants; that Defendants would skip some products; that if they did treat the furniture, warehouse staff would not apply the ForceField consistent with the directions and recommendations provided by Shield Industries. For instance, Defendants' personnel for would not pre-test the furniture to see if ForceField would damage it; it was applied (if at all) unevenly, not to all sides, and without regard to the amount recommended for coverage; Defendants did not allow proper time for the protectant to cure; no post-application test (a water drop test) was used to ensure the protectant had been effectively applied. Defendants also omitted that the protectant required annual reapplication, and that entire bottles of the ForceField protectants could be purchased by the customer for far less than what Defendants charged for a single application (10% of the furniture's purchase price as opposed to $14.95 per bottle).

30. ForceField Protection Plan customers have repeatedly complained about Defendants' deceptive practices:

> The quality of RTG furniture sucks And their so-called "Force Field" treatment is a total scam!!!! Purchased one Cindy Crawford Sidney Road sofa, one loveseat and one ottoman from RTG's supercenter in Katy. The sales person persuaded me into buying their so-called "Force Field" protection plan and I ended up paying about USD200 for the plan. She even gave me two tiny bottles of "Force Field" branded cleaning solutions, suggested to me that I can use them to clean the sofa if it is stained, making me believe that the sofa will be carefully treated. When I asked how the "Force Field" works, she explained that's something like "scotchgard."
>
> The sofa set arrived a week later, the delivery guys moved all pieces in and left within less than five minutes. All the three pieces were covered by thinnest plastic wrap and they removed the plastic and took it away. Again, all was done within 5 minutes before I can realize anything. And I haven't found any trace on the sofa, the love seat or the ottoman, indicating that they had been treated to resist liquid or soil. Not even a tiny tag says they were "Force Field" treated. Then I drop a tiny amount of water, as I will usually do to test the scotchgarded furnitures, the water didn't bead up at all and the water just darken the fabric, as you can see in one of the photos I uploaded. So that's what you called "Force Field" treated? the $6 scotchgard works better than the expensive $200 "Force Field" treatment, if there is really such treatment.[3]

Another Rooms to Go furniture customer wrote:

> I too purchased the "BOND" when I purchased my 3 piece living room set. Upon delivery I asked the delivery folks if the bond had been applied because I noticed the factory plastic was still on the furniture as well as the moving blankets and shrink wrap. They said if it's on the ticket then it should have been applied. After about 8 months the first accidental spill finally happened. Guess what it soaked right through, no beading as it should have done if applied correctly. I contacted customer service "WHAT A JOKE" It should be 1-800 we are not going to help you or stand behind our product or services. After speaking with them twice they sent a tech out to verify if the "bond" had been applied or not. The tech could not find a "sticker" on any of the three pieces and he said it should be a sticker applied once the furniture is treated. After that they wanted to come and apply the bond to the furniture. I told them I wanted new furniture with the bond applied prior to delivery like I had paid for to begin with. They flat out refused. The customer service manager as she claimed to be even told me that the spills on my

---

[3] *See, e.g.*, review #478180 from Mar. 5, 2014, Katy, Texas. http://rooms-to-go.pissedconsumer.com/rooms-to-go-isa-total-scam-especially-for-its-force-field-project-20140305478180.html. Last accessed on April 26, 2016.

sofa were between me and my sofa and I should not spill things on it. After
arguing with them several times I finally filed a claim with the BBB. RTG finally
agreed to replace the furniture but refused to apply the bond and issued a full
refund for the price I had paid for the bond to begin with. Of course, that was
after several messages through the BBB.

I also contacted the CEO of ForceField protectant and he is very nice and actually
responds personally to emails and phone calls. RTG is misrepresenting this bond
quite a bit. You are better off to buy the furniture then buy the ForceField
protectant and cleaner directly from ForceField. It's just $15 per spray bottle from
them and the cleaner is $20 if I remember correctly. Even if it takes 1 bottle per
piece that is only $45 to protect all three pieces vs $180 that RTG charges and
never even applies it as they should.

I am not sure I will ever shop with RTG again after the experience that I have had.
RTG is the issue with the Bond not the ForceField product. If they applied it as
they should it would work wonderfully.[4]

31. In 2015, Plaintiffs' counsel had tested furniture they had purchased, and also that of several other Rooms to Go customers. This furniture was supposedly treated with the ForceField fabric protectant. The furniture ranged in age from between three years and five months from date of delivery. The testing showed no evidence that either the ForceField product or any other stain-resistant treatment had been applied to the furniture. Chemical testing of Plaintiff Triplett's furniture in 2016 had similar results.

C. **Plaintiff's Experience**

32. On November 15, 2015, Plaintiff Kenny Triplett purchased a recliner from a Rooms to Go store in Dunn, North Carolina. Mr. Triplett was told that for an additional 10% of the purchase price on each item, Rooms to Go would spray on a fabric protectant like Scotchguard that would repel stains. He paid $49.99 for fabric protection for his recliner.[5] Based upon Defendants' representations, Mr. Triplett expected that the Defendants would

---

[4] August 1, 2015 entry for "Jacob" at http://roomstogo-complaints.blogspot.com/2009/01/dont-buy-bond-fabricleather-protection.html. Last accessed on April 26, 2016.

[5] Plaintiff purchased other furniture on the same date that were subsequently replaced due to a broken frame in March of 2016. Those pieces are not subject of this litigation.

professionally apply the ForceField protectant prior to his picking the furniture up at the distribution center.

33. Mr. Triplett also received the ForceField Protection Plan contract at the time of purchase. That agreement stated his furniture would be professionally treated to resist all food and beverage spills, and that in the event of a stain, Rooms to Go would provide cleaning, reupholstery or replacement at their discretion. Mr. Triplett would not have purchased the ForceField Protection Plan if it only consisted of a warranty.

34. Based upon information and belief, Defendants did not properly apply (if at all), the ForceField protectant to Mr. Triplett's furniture. Sometime after purchase, Mr. Triplett's recliner was stained by a food or beverage. In 2016, Mr. Triplett tested his recliner by dripping water on the furniture. The water did not bead up, but rather was readily absorbed. In addition, subsequent testing on Mr. Triplett's recliner showed no evidence that a fabric protectant had been applied. Accordingly, either Defendants failed to treat Mr. Triplett's recliner with the protectant as promised, or applied it in such an unprofessional manner that it is not effective. By not professionally applying the ForceField protectant to Plaintiff's recliner as promised, Defendants breached the contract contained in the ForceField Protection Plan and engaged in a deceptive sales practice.

35. In addition, Defendants did not disclose material information to Mr. Triplett. This included that: that the protectants had not been tested by the Defendants; that Defendants would skip some products if "too busy"; that if they did treat the furniture, warehouse staff would not apply the ForceField consistent with the directions and recommendations provided by Shield Industries. For instance, Defendants' personnel for would not pre-test the furniture to see if ForceField would damage it; it was applied (if at all) unevenly, not to all sides, and without

regard to the amount recommended for coverage; Defendants did not allow proper time for the protectant to cure; no post-application test (a water drop test) was used to ensure the protectant had been effectively applied. Defendants also omitted that the protectant required annual reapplication, and that entire bottles of the ForceField protectants could be purchased by the customer for far less than what Defendants charged for a single application (10% of the furniture's purchase price as opposed to $14.95 per bottle).

36. Had Plaintiff known these facts he would not have purchased the ForceField Protection Plan when he first purchased his furniture.

37. As a result of Defendants' deceptive conduct, Plaintiff suffered an ascertainable loss.

## CLASS ALLEGATIONS

38. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 37.

39. Pursuant to the Fed. R. Civ. P. 23(b)(3), Plaintiff asserts claims on behalf of the following North Carolina class, defined as follows:

> North Carolina Class: All residents of North Carolina who purchased ForceField Fabric or Leather Protection Plans from Defendants from December 1, 2012 to December 1, 2016.

40. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of his or her immediate family and judicial staff.

41. This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements. Plaintiff seeks to represent an ascertainable Class, as determining inclusion in the class can be

11

Case 5:16-cv-00926-FL  Document 2  Filed 12/01/16  Page 11 of 18

done through the Defendant's own records since the ForceField Protection Plan contracts are numbered and tied to Sales Order numbers.

42. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

43. Although the precise number of Class members is unknown and can only be determined through appropriate discovery, Plaintiff believes, and on that basis alleges, that the proposed Class is so numerous that joinder of all members would be impracticable as RTG sells thousands of pieces in furniture yearly, and the ForceField protection is sold with a large portion of those sales.

44. Questions of law and fact common to the Plaintiff Class exist that predominate over questions affecting only individual members, including inter alia:

   (a) Whether Defendants professionally treat ForceField Protection Plan customers' furniture with ForceField furniture protectant, as they represented they would;

   (b) Whether Defendants had a policy or practice of not treating all surfaces of the furniture, contrary to the ForceField Protection Plan;

   (c) Whether Defendants provided proper drying time for the ForceField products to properly cure on the Class Members' furniture;

   (d) Whether Defendants omitted material facts about the ForceField Protection Plans, including, *inter alia*, how the product was ordinarily applied, the absence of any tests of the protectants by the Defendants, and the need for reapplication;

   (e) Whether Defendants' practices are deceptive, unlawful, or unfair in any respect thereby violating North Carolina's Unfair and Deceptive Trade Practices Act, Gen. Stat. Ann. § 75-1.1, *et seq.*

   (f) Whether Defendants breached their ForceField Protection Plan contracts; and

   (g) Whether, if no contract is found to exist, if Defendants' conduct constitutes unjust enrichment.

45. Plaintiff is a member of the putative Class. The claims asserted by Plaintiff in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by Defendants and the relief sought is common.

46. Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class, as his interests are coincident with, not antagonistic to, the other Class members. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

47. Certification of the Class is appropriate pursuant to Fed. R. C. P. 23(b)(3) because questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action, it would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

48. A class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden on the courts that individual actions would create.

49. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of the class action.

# CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT

50. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 49.

51. Plaintiff and Class Members who purchased ForceField Fabric Protection Plans entered into identical binding and enforceable contracts with Defendants.

52. The contracts between Plaintiff and Class Members and Defendants were supported by consideration. Plaintiff and Class Members paid money to Defendants while Defendants agreed to perform under the contract, including Defendants' promise that the Plaintiff and Class Members furniture would be "professionally treated before delivery to resist all food and beverage spills that occur in most households."

53. Defendants materially breached the terms of their contracts with Plaintiff and Class Members by violating their commitment to professionally treat Plaintiff's and Class Members' furniture before delivery to resist all food and beverage spills that occur in most households.

54. Defendants did not apply the fabric protectants consistent with the product's instructions, if at all. As a result, Plaintiff does not have any trace of the fabric protectant on his furniture.

55. As a result of Defendants' breach of contract, Plaintiff and Class Members did not receive the benefit of their bargain, and are entitled to damages.

## COUNT II – North Carolina Unfair and Deceptive Trade Practices Act

56. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 49.

57.     In North Carolina, "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen Stat. § 75-1.1(a).

58.     Defendants' sale of ForceField Protection Plans was "in or affecting commerce" under N.C. Gen Stat. § 75-1.1(a) because Defendants were engaged in a business activity with consumers.

59.     Defendants' practice of misrepresenting its ForceField Protection Plans constitutes an unfair and deceptive trade practice in violation of N.C. Gen Stat. § 75-1.1(a).

60.     Defendants' practice of not disclosing material information to its customers at the point of sale constitutes an unfair and deceptive trade practice in violation of N.C. Gen Stat. § 75-1.1(a).

61.     As a result of these unfair and deceptive trade practices, Plaintiff individually, and the members of the putative Class, have suffered actual injury in that they would not have not purchased ForceField Protection Plans if Defendants had not engaged in their misrepresentations and omissions.

62.     In addition, as a result of these unfair and deceptive trade practices, Plaintiff individually, and the members of the putative Class, have suffered actual injury in that they paid more for ForceField Protection Plans because of Defendants' misrepresentations and omissions than they would have in the absence of the misrepresentations and omissions.

63.     Pursuant to N.C. Gen. Stat. § 75-16 and 75-16.1, Plaintiff is entitled to compensatory damages, treble damages, attorney's fees, and costs.

15
Case 5:16-cv-00926-FL   Document 2   Filed 12/01/16   Page 15 of 18

## COUNT III – UNJUST ENRICHMENT
(Brought, in the Alternative)

64. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 49.

65. Plaintiff purchased Defendants' ForceField Protection Plans as a direct result of Defendants' misrepresentations and omissions, including their misrepresenting whether the products were actually applied and their omitting the fact that the products could be purchased directly from the seller of ForceField fabric protection products at a fraction of the cost of the Plans.

66. Defendants generated profits from its misconduct.

67. Defendants have knowingly and unjustly enriched themselves at the expense and to the determinant of the Plaintiff and each member of the Class by collecting money to which they are not entitled. Benefits were conferred on Defendants under circumstances that give rise to a legal or equitable obligation on the part of defendants to account for the benefits received. Defendants have received benefits under circumstances where it would be unfair and unjust for defendants to retain them without plaintiff and each member of the Class being repaid or compensated.

68. Under the law of North Carolina, Defendants have been unjustly enriched.

69. It would be morally wrong to permit the Defendant to enrich itself at the expense of the Plaintiff and the Class. Defendants should be required to disgorge this unjust enrichment.

**WHEREFORE,** Plaintiff requests judgment against the Defendants for himself and the members of the class as follows:

A. Certification of the Class pursuant to Fed. R. Civ. P. 23(b)(3);

B. Restitution of all charges paid by Plaintiff and the Class;

C. Disgorgement to Plaintiff and the Class of all monies wrongfully obtained and retained by Defendant;

D. Compensatory and actual damages in an amount according to proof at trial;

E. Statutory damages, penalties, treble damages, as provided by law;

F. Prejudgment interest commencing on the date of payment of the charges and continuing through the date of entry of judgment in this action;

G. Costs and fees incurred in connection with this action, including attorney's fees, expert witness fees, and other costs as provided by law;

H. Punitive damages;

I. Equitable Relief;

J. Injunctive Relief; and

K. Granting such other relief as the Court deems proper.

## JURY TRIAL DEMAND

Plaintiffs hereby request a jury trial for all issues so triable.

DATED this 1st day of December, 2016.

Respectfully submitted,

/s/ Martha A. Geer
Martha A. Geer  (Bar No. 13972)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
150 Fayetteville Street, Suite 980
Raleigh, NC 27601
Telephone: (919) 890-0560
Facsimile:  (919) 890-0567
Email:  mgeer@cohenmilstein.com

Theodore J. Leopold (to be admitted pro hac vice)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL  33410

Telephone: (561) 515-1400
Facsimile: (561) 515-1401
Email: tleopold@cohenmisltein.com

Douglas J. McNamara (to be admitted pro hac vice)
Eric A. Kafka (to be admitted pro hac vice)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW
Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: dmcnamara@cohenmilstein.com
Email: ekafka@cohenmilstein.com

Steve Calamusa (to be admitted pro hac vice)
**GORDON & DONER**
4114 Northlake Blvd.,
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsimile: (561) 799-4050
Email: SCalamusa@forthejinjured.com

**Attorneys for Plaintiffs**